UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RICHARD CLAY MIHLFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-00556 |
| | ) | (MATTICE/GUYTON) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Doc. 11 & 11-1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 12 & 13]. Plaintiff Richard Mihlfeld seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

Plaintiff filed a Title II and Title XVIII application on June 9, 2010. [Tr. 131-41]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 67-81]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge, James A. Sparks, on June 4, 2012 in Knoxville, Tennessee. [Tr. 84-86; 28-40]. The ALJ issued an unfavorable decision on June 25, 2012. [Tr. 12-22]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on April 14, 2013. [Tr. 6-8; 1-5].

Having exhausted his administrative remedies, Plaintiff filed a complaint with this Court

on September 18, 2013, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.   ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The claimant has not engaged in substantial gainful activity since July 20, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.)

3. The claimant has the following severe impairments: status post pelvic fracture and internal fixation surgery; chronic right hip pain; obesity; hypertension; right shoulder problem; major depressive disorder, chronic, mild; cannabis dependence, sustained partial remission, by self-report; and polysubstance dependence, sustained full remission, by self-report (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work. The claimant could lift/carry 21 to 50 pounds occasionally and 11 to 20 pounds frequently. He could sit for six hours at one time without interruption for a total of eight hours in an eight-hour workday. He could stand or walk for four hours at one time without interruption for a total of six hours in an eight-hour workday. He could frequently do reaching (overhead and all other), handling, fingering, feeling, and pushing/pulling. He could occasionally operate foot control with the right foot and frequently with the left foot. The claimant could occasionally climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. He could occasionally tolerate unprotected heights,

2

humidity, and wetness, dust/odors/fumes, extreme cold and extreme heat and vibrations. He could frequently tolerate exposure to operating a motor vehicle and moving mechanical parts.

6. The claimant is capable of performing part relevant work as a convenience store cashier (auto services). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 12-22].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

>   1.  If claimant is doing substantial gainful activity, he is not disabled.

>   2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

>   3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

>   4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

>   5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and

4

his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless

5

and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

The Plaintiff was injured in a motorcycle accident on July 16, 2009. [Tr. 261]. He was admitted to the emergency room at University of Tennessee Medical Center and subsequently diagnosed with a fractured pelvis. Id. On July 18, 2009, the Plaintiff underwent surgery to correct a displaced pubic symphysis and stabilize the right side of the posterior pelvis. [Tr. 265-66]. During surgery, two 3.5 millimeter screws were placed on each side of the anterior pubis. Id. Two 6.5 millimeter lag screws were then applied to stabilize the posterior pelvic fracture. Id. On September 10, 2009, Plaintiff had a follow up appointment with his orthopedic surgeon, Dr. Scott T. Smith. [Tr. 294]. Dr. Smith noted that Plaintiff still had pain in his hips but that his hips were moving smoothly and he had good flexibility. Id. Dr. Smith advised that the Plaintiff could return to work without restrictions and prescribed "one last Hydrocodone" and Tramadol. Id.

On June 9, 2010, Plaintiff applied for disability insurance benefits from the Social Security Administration. [Tr. 131-34]. Plaintiff described the physical and mental conditions

6

affecting his ability to work as a "[b]roken pelvis, complications from a motorcycle accident." [Tr. 172]. Plaintiff reported that his disability began on March 15, 2010, the day he stopped working "because of my conditions." [Tr. 135; 172][1] The Defendant denied the Plaintiff's application on August 2, 2010. [Tr. 41-54].

The Plaintiff requested a reconsideration of his claim on September 10, 2010. [Tr. 75-77]. Plaintiff reported the following increased symptoms or injuries: "greater, more severe pain in legs, feet and hip. A pinched nerve in my neck has caused loss of sensation in my dominant right hand. My general strength and endurance are deteriorating and declining. I become easily fatigued." [Tr. 56]. Third party, Teddy Davis, and Plaintiff both filed function reports on November 20, 2010 and November 22, 2010, respectively, reporting increased difficulty ambulating and decreased functionality. [Tr. 187-203]. The Plaintiff saw Dr. Peter Stimpson for chronic pain and depression from August through November 2010. [Tr. 303-14]. The Plaintiff notified the Defendant of an umbilical hernia in a Function Report dated March 18, 2011. [Tr. 206].

Dr. Eva Misra conducted a physical examination of the Plaintiff on April 29, 2011 and found that the Plaintiff suffered from chronic pain from the motorcycle accident, had "mild trouble doing station on the right with standing on heels and toes[,]" but did not have any assistive devices or require a cane to ambulate. [Tr. 324-26; 319]. Dr. Misra further noted that the Plaintiff's limitations had neither lasted for nor would last for twelve consecutive months,

---

[1] There is a discrepancy between the parties regarding the onset date. Plaintiff's application states that March 15, 2010 is the onset date of disability because on or about March 15, 2010 the Plaintiff ceased work due to his alleged disability. [Tr. 135; 172]. However, the ALJ noted his onset date as June 20, 2009, two days after Plaintiff's surgery. The ALJ apparently found July 20, 2009 to be the Plaintiff's onset date because that is the date cited by Plaintiff's attorney during the hearing. [See Tr. 32].

[Tr. 323], and Dr. Misra noted that the Defendant had developed an umbilical hernia. [Tr. 325].

Dr. Pamela Brody conducted a psychological examination of the Plaintiff on July 1, 2011 and submitted a Statement of Ability to Do Work Related Activities (Mental). [Tr. 337-43]. Dr. Brody diagnosed the Plaintiff with: "Major Depressive Disorder, chronic, mild; Cannabis Dependence, sustained partial remission, claimant's self-report; Nicotine Dependence; Polysubstance Dependence, sustained full remission, claimant's self-report." [Tr. 343]. In assessing Plaintiff's ability to work, Dr. Brody noted that Plaintiff's ability to understand, remember, carry out, and make judgments on complex work-related instructions was mildly affected. [Tr. 337].

The Plaintiff requested reconsideration, and on July 21, 2011, the Defendant affirmed the previous denial, explaining that "the initial determination denying your claim was proper under the law." [Tr. 78]. Plaintiff requested a hearing before an Administrative Law Judge on July 25, 2011. [Tr. 84-86].

Vocational Examiner, Rachel McMullin, submitted a Vocational Analysis Worksheet on July 19, 2011. [Tr. 224-26]. Ms. McMullin found that that the Plaintiff was "semiskilled" and that the "RFC is mixed and rule directs 'Not Disabled.'" [Tr. 225-26]. Throughout November 2011 and February 2012 the Plaintiff visited the Blount County Health Department seeking treatment for chronic pain. [Tr. 378-88]. The Plaintiff requested a walker due to difficulty ambulating on December 19, 2011. [Tr. 385]. On the same day, Advanced Practice Nurse ("APN") Teresa Thayer, under the supervision of James A. Burgin, M.D., prescribed a walker to the Plaintiff for relief of pelvic pain. [Tr. 359].

### B. Other Evidence

The ALJ conducted a hearing on June 4, 2012, at which the Plaintiff testified. [Tr. 28-

8

40].  The ALJ issued an unfavorable decision on June 25, 2012 [Tr. 9-27], and Plaintiff appealed on July 3, 2012.  [Tr. 6-8].  A CT scan was conducted on February 8, 2013, and submitted to the Defendant on February 12, 2013, which showed a right inguinal hernia.  [Tr. 404-06].  The Defendant denied the Plaintiff's request for review on August 14, 2013.  [Tr. 1-5].

## V.      POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred by failing to consider whether his pelvic injury constitutes a listed impairment per 20 C.F.R. § 404.1525(a) and § 404, Subpt. P, App. 1 ("Listings").  The Plaintiff maintains that he meets the criteria of Listing 1.06 "*[f]racture of femur, tibia, pelvis, or one or more of the tarsal bones,*" C.F.R. § 404, Subpt. P, App. 1, and claims that Defendant's failure to address the pelvic injury under the Listings was not harmless error, thereby creating grounds for remand.

The Plaintiff asserts that his pain symptoms were discredited without substantial evidence and should have been considered when determining whether the pelvic injury met the definition in 1.06 of the Listings and Plaintiff's RFC.  The Plaintiff further argues that the Defendant failed to consider his umbilical hernia as a severe impairment and a factor in determining his RFC. Finally, Plaintiff contends that medical records created by nurse practioners and advanced practice nurses should be considered in determining the severity of his impairments because nurses are under the direct supervision of licensed physicians.

The Commissioner responds that the ALJ's failure to analyze the pelvic injury under the Listings is harmless error because the pelvic injury did not meet the criteria of 1.06.  The Commissioner contends that the Plaintiff failed to meet his burden of proving that the pelvic injury met the definition set forth in the Listings.  The Commissioner argues specifically that the Plaintiff failed to show an inability to ambulate and that APN Thayer's prescription for a walker

9

is not an acceptable medical source under 20 C.F.R. § 404.1513(a) and 416.913(a).

The Commissioner argues that any failure to consider the Plaintiff's hernia was not reversible error because medical records of the CT scan were submitted after the hearing on June 4, 2012. The Commissioner contends that the Plaintiff did not have good cause for not submitting the evidence prior to the ALJ's decision, and regardless of good cause, Plaintiff failed to meet his burden of proving that evidence of the hernia was material.

In regards to the RFC determination, the Commissioner claims that the ALJ properly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ appropriately weighed Plaintiff's self-reported pain symptoms with his medical records, treating physician statements, and activities of daily living in determining the Plaintiff's RFC.

## VI. ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A. Whether the ALJ Properly Considered Plaintiff's Pelvic Injury Under the Listings

The Court finds that the ALJ did not err in his analysis of Plaintiff's pelvic injury. Once a plaintiff proves the existence of a severe impairment, the impairment must be analyzed under the Listings set forth in 20 C.F.R. § 404, Subpt. P, App. 1. See Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011) (finding that "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."). In Reynolds, the court found that the ALJ erred by failing to analyze the Plaintiff's physical impairments because the ALJ "skipped an entire step of the necessary analysis. He was required to assess whether [Plaintiff] met or equaled a Listed Impairment . . . but did not do so." Id. at 415.

Such an error is generally not considered harmless. In <u>Reynolds</u>, the Sixth Circuit explained that "[t]he ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." <u>Id</u>. at 416. (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Without sufficient evaluation of all severe impairments under the Listings, it is impossible to determine whether the ALJ's decision was based on substantial evidence. <u>See Id</u>. (citing <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir.1996).

However, such an error is considered harmless where the ALJ has considered the severe impairments elsewhere. <u>See Bledsoe v. Barnhart</u>, 165 F. App'x 408, 411 (6th Cir. 2006) (finding that "[t]he ALJ did not err by not spelling out every consideration that went into the step three determination . . . [t]he ALJ described evidence pertaining to all impairments, both severe and non-severe . . . five pages earlier in his opinion and made factual findings. The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis.").

In this case, the ALJ's failure to specifically consider the pelvic injury under 1.06 *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones* is harmless error. In step-two, the ALJ determined that the Plaintiff had several severe impairments, including "status post pelvic fracture and internal fixation surgery [and] chronic right hip pain." [Tr. 14]. Yet when the ALJ analyzed the Plaintiff's impairments under the Listings in 20 CFR § 404, Subpart P, Appendix 1, he only addressed the Plaintiff's mental impairments per 12.04 and 12.09. [Tr. 15-16]. However, in step-four, determination of Plaintiff's RFC, the ALJ analyzed the pelvic injury in depth.

In order to satisfy 1.06 *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones*, the Plaintiff must demonstrate:

A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;

And

B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. § 404, Subpt. P, App. 1, 1.06.

The ALJ considered all the facts of Plaintiff's pelvic injury and specifically noted that "there was no pelvic instability or tenderness. The claimant's wounds had healed." [Tr. 18]. The ALJ set forth the full history of the pelvic injury, Plaintiff's surgery, and his subsequent medical care addressing his chronic pain. [See Tr. 16-20]. After reciting the facts of the pelvic injury and Plaintiff's medical history, the ALJ stated that "[u]ltimately, despite the claimant's alleged severe impairments, the evidence falls short of corroborating any fully disabling impairment or combination thereof." [Tr. 20].

The ALJ further made findings of fact regarding the Plaintiff's ability to ambulate in determining Plaintiff's RFC. [See Tr. 16]. The ALJ found that the Plaintiff "could sit for six hours," "stand or walk for four hours," and he "could occasionally climb latters and scaffolds, balance, stoop, kneel, crouch, and crawl." Id. Although the ALJ did not specifically state that he considered the pelvic injury under 1.06, similarly to Bledsoe, the ALJ found that "the evidence falls short of corroborating any fully disabling impairment or combination thereof." [Tr. 20]. See Bledsoe (noting that "[t]he ALJ described evidence pertaining to all impairments . . . [and] explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis.") 165 F. App'x at 411.

12

This Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley, 581 F.3d at 405 (citing Key, 109 F.3d at 273). The ALJ included evidence of Plaintiff's pelvic injury, [see Tr. 18-19], made findings of fact about the injury and Plaintiff's ability to ambulate, and adopted Dr. Misra's assessment of Plaintiff's physical functional capacity. [See Tr. 16-20]. Although the ALJ did not specifically address the pelvic injury under 1.06, the ALJ considered the injury elsewhere and there is substantial evidence to find that the Plaintiff's pelvic injury does not meet the requirements of 1.06.

## B. Plaintiff's Credibility

Next, the Plaintiff argues that the ALJ erred in evaluating his credibility regarding his pain symptoms. [Doc. 11-1 at 5-7]. Specifically, the Plaintiff argues that the ALJ's decision regarding the Plaintiff's credibility does not comply with Social Security Ruling 96-7p. Id. at 5-6.

An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. See Walters, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that

13

it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (1996); 20 C.F.R. § 1529(c)(3). Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Plaintiff relies on Social Security Ruling 96-7p:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

14

Plaintiff argues that the ALJ violated this rule by finding that "[Plaintiff] has not generally received the type of medical treatment one would expect for a disabled individual." [Tr. 18]. However, the ALJ went on to note that "[a]lthough the [Plaintiff] does not have medical insurance, he has not shown that he aggressively pursued medical care at free clinics and other places for indigent persons in urgent need of medical care." Id. Although the ALJ noted Plaintiff's lack of medical treatment, this statement was immediately followed by a consideration of his lack of insurance, thereby satisfying 96-7p. The ALJ not only considered Plaintiff's testimony regarding his pain symptoms, but also his medical history following the motorcycle accident of July 16, 2009, his subsequent medical care, and Dr. Misra's diagnosis of April 2011, assigning her opinion great weight. [Tr. 18-19].

Plaintiff further argues that the ALJ violated Social Security Ruling 96-7 by failing to consider all the factors set forth above. [Doc. 11-1 at 6-7]. Specifically, the Plaintiff argues that the ALJ failed to consider factor six, "[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board)." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3; [Doc. 11-1 at 6-7]. Yet the Plaintiff fails to take note of the ALJ's consideration of Plaintiff's testimony and evidence demonstrating his methods of relief. The ALJ not only noted that the Plaintiff takes Hydrocodone for the pain in his lower extremities, the ALJ went on to include Plaintiff's preference for sitting on the floor to relieve the pain in his hips and the method of walking barefoot in the snow to relieve the burning sensation in his feet. [Tr. 17-18]. The ALJ analyzed Dr. Misra's report, noting her analysis that "the [Plaintiff] was cooperative, but she did not think he was reliable on his history." [Tr. 18].

The Court finds that the ALJ's credibility determination is supported by substantial

evidence. In particular, the Court finds that the ALJ considered explanations for why the Plaintiff did not seek significant medical care, specifically noting his lack of insurance. Id. Further, the ALJ considered all of the factors set forth in 96-7p, specifically including evidence of the other measures Plaintiff employs to relieve his pain. [Tr. at 17-18]. The ALJ went on to consider the Plaintiff's medical history and reports from doctors, giving Dr. Misra's report great weight. Id. Accordingly, the Court finds that the ALJ properly addressed and considered the Plaintiff's credibility.

## C. Additional Severe Impairments

The Plaintiff argues that evidence of the CT scan, submitted to the Appeals Council on February 12, 2013, [Tr. 404], is new and material, warranting a remand in this case and that the ALJ erred in not considering the Plaintiff's hernia when determining his RFC. [Doc. 11-1 at 8].

### a. New Evidence

Plaintiff asserts that the Appeals Council should have considered new evidence submitted by the Plaintiff on February 12, 2013. [Tr. at 404]. The additional evidence consists of a CT scan taken on February 8, 2013 which showed that Plaintiff had a "bilateral osteoarthritis of the sacroiliac joints with prominent left anterior bridging osteophyte projecting from the iliac side of the joint across the joint; sclerosis of the right SI joint; and a right-sided inguinal hernia." Id.

The Court may not consider new evidence in its substantive review of the ALJ's denial of benefits. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). However, pursuant to 42 U.S.C. § 405(g), the Court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." Id (quoting Cline v. Comm'r of Soc. Sec. 96 F.3d 146, 148 (6th Cir. 1996)). This is referred to as a "sentence six remand." Sizemore v.

Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). The proponent of the new evidence bears the burden of proving all three elements. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005).

Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Foster, 279 F.3d at 357 (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott v. Apfel, 28 F. App'x 420, 424 (6th Cir. 2002)).

Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Foster, 279 F.3d at 357 (quoting Sizemore, 865 F.2d at 711). In addition, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." Pickard, 224 F. Supp. 2d at 1171.

Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357. "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." Pickard, 224 F. Supp. 2d at 1171. Further, "this circuit has taken a harder line on the good cause test." Oliver v. Sec'y Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986) (citing Willis v. Sec'y Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (noting that "Willis held that in order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing.")

The Court finds that the Plaintiff has failed to meet his burden of proving that this evidence is new, material, or that he had good cause for not presenting it to the ALJ. See

17

Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005). The CT scan results concern the same pelvic injury and resulting symptoms, as fully detailed in the record. The Plaintiff has not presented any evidence, much less shown a "reasonable probability," that the CT scan results would have prompted the ALJ to reach a different disposition. See Foster, 279 F.3d at 357 (quoting Sizemore, 865 F.2d at 711). Further, the Plaintiff has failed to provide any explanation as to why he did not request a CT scan prior to the hearing on June 4, 2012. The CT scan was conducted February 8, 2013, almost eight months after the hearing. Plaintiff offers no explanation as to why he waited so long to have a CT scan and fails to meet his burden of showing good cause for why the results were not made available at the hearing on June 4, 2012.

**b. RFC Analysis**

The Plaintiff further contends that the ALJ erred by not considering the Plaintiff's hernia in his determination of Plaintiff's RFC. [Tr. at 8]. The Plaintiff argues that because the hernia was included in Dr. Misra's report of April 29, 2011 and "inguinal hernias can become enlarged with lifting activities . . . it is incumbent upon Defendant to evaluate the condition and its effect [u]pon the ability to work." Id.

ALJ's are required to consider both severe and non-severe impairments when determining a claimant's RFC. See 20 C.F.R. § 416.945(a)(2) (explaining that "[i]f you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."). However, it is "legally irrelevant" that an impairment was determined as non-severe if the ALJ finds other severe impairments. See McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (finding that "the ALJ must consider both severe and nonsevere

18

impairments in the subsequent steps. . . [t]herefore, because the ALJ found that [Plaintiff] has some severe impairments, he proceeded to complete steps three through five of the analysis. It then became "legally irrelevant" that her other impairments were determined to be not severe.") (quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988)).

In this matter, the ALJ found several impairments to be severe and conducted the full five-step disability analysis. In determining Plaintiff's RFC, the ALJ stated that "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." [Tr. at 17]. Further, the ALJ adopted Dr. Misra's report and gave her analysis great weight. [Tr. at 19]. The hernia was included in Dr. Misra's report and the ALJ relied on her "credible physical functional capacity determinations." Id. Therefore, the fact that the ALJ did not specifically address the hernia or include it as a severe impairment is legally irrelevant. The ALJ considered all of Plaintiff's symptoms and gave great weight to Dr. Misra who considered the hernia in her analysis. Plaintiff's claim that the ALJ committed reversible error is thus unfounded.

**D. Acceptable Medical Evidence**

The Plaintiff claims that the walker prescription written by APN Thayer should be considered as acceptable medical evidence. [Doc. 11-1 at 8-9]. Although nurses are not included as acceptable medical sources under 20 C.F.R. § 404.1513(a), § 404.1513(d) specifically states that:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how

19

> it affects your ability to work. Other sources include, but are not
> limited to--
> (1) Medical sources not listed in paragraph (a) of this section (for
> example, nurse-practitioners, physicians' assistants, naturopaths,
> chiropractors, audiologists, and therapists)[.]

The ALJ properly included APN Thayer's prescription in his opinion and stated specifically that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-67p." [Tr. 17]. The ALJ further noted that "[Plaintiff] requested a walker during a visit [to Blount County Health Department] in December 2011 due to difficulty with ambulation . . . [a]n advanced practice nurse wrote a prescription for a walker based on a diagnosis of pelvic pain." [Tr. at 18-19]. Therefore, Plaintiff's argument is moot because the ALJ did include the walker prescription in his analysis.

The Defendant argues that APN Thayer is an unacceptable medical source in determining whether the ALJ properly conducted the step-three analysis. [Doc 13 at 10-11]. This argument is moot as well because the Court has already found that the ALJ's failure to specifically address the pelvic injury under the Listings was harmless error.

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 12]** be **GRANTED.**

Respectfully submitted,

_United States Magistrate Judge_

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).